## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **SEAN L. GILBERT,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-mc-217-CM** |
| | ) | |
| **RARE MOON MEDIA, LLC,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

### MEMORANDUM AND ORDER

Pending before the court is movant Sean L. Gilbert's Motion to Compel Non-Party Witness to Comply with Deposition Subpoena (Doc. 1). For the reasons discussed below, the court grants in part and denies in part the motion.[1]

## I.    BACKGROUND

Movant Sean L. Gilbert filed this miscellaneous action and moved to compel respondent Rare Moon Media, LLC to comply with a deposition subpoena issued in *Gilbert, et al. v. MoneyMutual, LLC, et al.* ("the Gilbert lawsuit"). The Gilbert lawsuit is docketed as a class action pending in the United States District Court for the Northern District of California, Case No. 4:13-cv-01171-JSW. Respondent was, but no longer is, a defendant in the Gilbert lawsuit. Among other allegations, plaintiffs in the Gilbert lawsuit, including movant, allege that respondent was involved in a racketeering enterprise with certain current defendants and unlicensed lenders. Plaintiffs allege that the current defendants operated websites to market illegal loans to California residents and then sold the qualifying leads to respondent. Plaintiffs also allege that respondent controlled the unlicensed

---

[1] Neither party has requested a hearing under D. Kan. Rule 7.2, and the court does not believe a hearing is necessary to resolve this dispute, so it decides the motion on the memoranda of the parties.

lenders.  On January 12, 2015, the California court granted Rare Moon Media, LLC's motion to compel arbitration and dismissed plaintiffs' claims against it and related defendants.  (*See* Doc. 160 in Case No. 4:13-cv-01171-JSW (N.D. Cal.).)  Movant argues that the liability of the current defendants turns in part on their relationship and communications with the unlicensed lenders and respondent here.

On January 23, 2015, the United States District Court for the Northern District of California issued a subpoena for a deposition duces tecum under Federal Rule of Civil Procedure 45 for service on Rare Moon Media, LLC.  On February 27, 2015, plaintiff served the subpoena on Rare Moon Media, LLC.  On March 13, 2015, Rare Moon Media, LLC served written objections to the deposition topics and document requests.  The parties met and conferred by email, letters, and phone conferences.  During this process, the parties agreed that no live testimony or document production would be necessary if Rare Moon Media, LLC drafted an appropriate declaration acceptable to plaintiffs in the Gilbert lawsuit.  Movant alleges that the parties agreed that either party could bring a relevant motion regarding the subpoena at any time; Rare Moon Media, LLC states they made no such agreement.  The parties ultimately were unable to agree on the proper scope for all of the declaration topics, so movant opened the present miscellaneous case in this district and filed the present motion.

## II.   ANALYSIS

Movant first asks the court to transfer the motion to the Northern District of California pursuant to Rule 45(f).  In the alternative, he asks this court for an order compelling Rare Moon Media, LLC to appear for deposition, answer questions on the stated topics, and produce the requested documents.  Respondent argues that transfer is not warranted and asks the court to modify the deposition topics and document requests, quash the subpoena, or enter a protective order.

Rule 45 of the Federal Rules of Civil Procedure governs discovery of non-parties by subpoena. Rule 45 directs that a subpoena must issue from the court where the action is pending, here, the Northern District of California.  Fed. R. Civ. P. 45(a)(2).  The place of compliance for a deposition subpoena or subpoena for production of documents, however, must be within 100 miles of where the person resides, is employed, or regularly transacts business or within the state where the person resides, is employed, or regularly transacts business in person.  Fed. R. Civ. P. 45(c).  Plaintiff alleges that defendant Rare Moon Media, LLC is based in Lenexa, Kansas.  (*See* Doc. 3-1 at 4 ¶ 10.)  The court for the district where compliance is required enforces subpoenas of nonparties.  Fed. R. Civ. P. 45(d)(1); 45(d)(2)(B)(i).  This district court is within 100 miles of Lenexa, Kansas.

### A.      Transfer Under Federal Rule of Civil Procedure 45(f)

Movant requests transfer of this motion under Fed. R. Civ. P. 45(f) to the Northern District of California, where the Gilbert lawsuit is pending.  Rule 45(f) provides as follows:

> When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances.  Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court.  To enforce its order, the issuing court may transfer the order to the court where the motion was made.

Movant seeks transfer of the motion here, stating that "exceptional circumstances" exist here which warrant transfer.  Movant argues that this is a "complicated class action and the California federal court is most familiar with the relevance of the testimony and documents that are being sought."  (Doc. 2 at 4).

Respondent opposes the motion to transfer.  Respondent notes the two circumstances identified by the advisory committee note to Rule 45(f) which warrant transfer of a subpoena-related discovery motion:  (1) where the issuing court has already ruled on issues presented by the motion and (2) when

the same issues are likely to arise in discovery in many districts. Respondent argues that exceptional circumstances do not exist here, and that a complicated case is not exceptional.

The court agrees that exceptional circumstances do not exist here. The parties have not alerted the court to any opinions by the issuing court regarding issues presented by this motion, nor have the parties identified instances where the same issues may arise in discovery in other districts. Complicated cases are not "exceptional," and the court understands the issues here. Therefore, the court denies movant's request to transfer the motion and turns to movant's motion to compel.

**B.      Timeliness of Motion to Compel Under District of Kansas Local Rule 37.1(b)**

Movant opened this miscellaneous action 116 days after Rare Moon Media, LLC served its objections to the subpoena on plaintiffs in the Gilbert lawsuit. Respondent asks the court to dismiss movant's motion as untimely under D. Kan. Rule 37.1(b), which requires motions to compel discovery to be filed within 30 days of the objections that are the subject of the motion. Movant argues that Local Rule 37.1 does not apply here because it conflicts with Federal Rule of Civil Procedure 45. Under Fed. R. Civ. P. 45, after a non-party files objections to a subpoena requesting documents or tangible things, the commanding party may "[a]t any time, on notice to the commanded person . . . move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Local Rule 37.1(b) appears to restrict this timeline:

> Any motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 must be filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing such motion for good cause. Otherwise, the objection to the default, response, answer, or objection is waived.

D. Kan. Rule 37.1(b). Because of the "conflict" between Fed. R. Civ. P. 45(d)(2)(B)(i) and D. Kan. R. 37.1(b), movant argues that the court should not enforce the local rule here. Movant also argues that the object of the local rule is the expedient resolution of discovery disputes in cases already pending in

the district, which is not applicable here because the underlying case is not pending in this district. Movant also argues that the parties agreed that while they were conferring on a declaration, either party could bring a relevant motion, and provides a declaration from movant's counsel stating this belief. (*See* Decl. Jeffrey Wilens (Doc. 3) at ¶ 7 ("On March 17, 2015[,] counsel for [Rare Moon Media, LLC] stated the deposition would be postponed but it was agreed the parties would continue their meet and confer efforts.  The deposition notice did not need to be re-served.  The parties can bring appropriate motions with respect to the deposition at any time.").)  Respondent disagrees that the parties reached such an agreement.  (*See* Decl. Paul Croker (Doc. 10-2) at ¶ 4 ("During my communications with Mr. Wilens, I did not agree to give Mr. Wilens an open-ended extension of plaintiffs' deadline to file a motion to compel with respect to the Subpoena.").)  Respondent attaches an email exchange between counsel, which it argues supports its position.  (Doc. 10-4.)

When a party files a motion to compel after the expiration of the time allowed for its timely filing, the proper standard to determine if it should be allowed out of time is a showing of excusable neglect.  *Layne Christensen Co. v. Purolite Co.*, No. 09-2381-JWL-GLR, 2011 WL 124538, at *1 (D. Kan. Jan. 14, 2011).  The factors the court uses to determine excusable neglect are (1) whether the movant acted in good faith; (2) the reason for the delay, including whether it was within the reasonable control of the movant; (3) the danger of prejudice to the nonmoving party; and (4) the length of the delay and its potential impact on judicial proceedings."  *Id.*

Even if Local Rule 37.1(b) would ordinarily bar movant, an out-of-district litigant, from filing a motion to compel on a subpoena in this district 116 days after serving objections, the court does not find it does so under these circumstances.  District of Kansas Local Rule 37.1 permits the court to allow litigants to file motions to compel out of time upon a showing of good cause, and the court believes that movant could show good cause for the delay here.  The court does not believe this email

conclusively shows that the parties agreed that respondent could bring a relevant motion at any time, but that movant could not.[2]  While the court cannot guess as to the agreement counsel actually made, movant provided a declaration that the parties agreed that either party could bring motions related to the subpoena at any time.  This good faith belief is sufficient to constitute good cause to extend the deadline, particularly when the belief does not conflict with the email that respondent attached and is consistent with the parties' continued attempts to reach a resolution.  Therefore, the record supports a finding of excusable neglect, and the court will consider movant's motion on the merits.

###    C.      Objections to Definitions

Respondent objects to several of the definitions within the subpoena and argues that they make the subpoena topics and document requests overbroad and seek irrelevant information.  Specifically, respondent objects to movant's definition of RARE MOON, CLASS PERIOD, SELLING SOURCE, and LENDERS[3] used in the first document request and incorporated throughout the deposition topics and document requests.  The court will deem abandoned those objections that respondent initially raised but did not rely upon in its response.  *Beach v. City of Olathe*, No. 99-2210-GRV, 2000 WL 960808, at *8 (D. Kan. July 6, 2000).

---

[2] In the email, movant's counsel agrees that the parties agreed to the following as described by respondent's counsel:

> We agreed to postpone the deposition of a representative of Rare Moon Media, LLC pursuant to the attached subpoena while the parties continue to meet and confer regarding the deposition topics and document requests.  As part of this agreement, Rare Moon Media agrees that plaintiffs do not need to re-serve the subject subpoena in the event the deposition needs to be rescheduled.  Further, plaintiffs agree that Rare Moon Media may file a motion to quash or modify the subpoena, motion for protective order and motion to stay the deposition at any time prior to the rescheduling of the deposition at a mutually agreeable time.

(Doc. 10-4.)  At the very least, by not precluding movant from re-serving the subpoena, respondent also necessarily agreed that movant could file a motion to compel compliance after re-serving.

[3] The court capitalizes the terms throughout this order for consistency with the subpoena.

Rule 45 does not specifically provide for lack of relevance and overbreadth as reasons for quashing or modifying a subpoena. *Stewart v. Mitchell Transp.*, No. 01-cv-2546 JWL, 2002 WL 1558210, at \*3 (D. Kan. July 11, 2002). It is well settled, however, "that the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) (citing the advisory committee note to the 1970 Amendment of Rule 45(d)(1)). Therefore, the court looks to the same standards as set forth in Fed. R. Civ. P. 26(b) and Fed. R. Civ. P. 34 in determining whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information. *See Stewart*, 2002 WL 1558210, at \*3; *Booth v. Davis*, No. 10-cv-4010-RDR, 2011 WL 2008284, at \*6 (D. Kan. May 23, 2011).

Under Rule 26(b)(1), a party may receive discovery "regarding any non-privileged matter that is relevant to any party's claim or defense . . . ."[4] Relevance is broadly construed and the court should permit a request for discovery unless "*it is clear* that the information sought can have *no possible bearing*" on the claim or defense of a party. *Sheldon v. Vermonty*, 204 F.R.d. 676, 689–90 (D. Kan. 2001) (emphasis in original). When a party seeks discovery that appears facially relevant, the party resisting discovery "has the burden to show the information does not come within the broad scope of relevance as defined by Fed. R. Civ. P. 26(b) or the potential harm outweighs the presumption in favor of broad disclosure." *Booth*, 2011 WL 2008284, at \*6. When a discovery request seeks information that is not facially relevant, however, the party seeking the discovery bears the burden of demonstrating its relevance. *Id.*

---

[4] On December 1, 2015, amendments to Federal Rules of Civil Procedure 26 and 34, among others, took effect. By order of the United States Supreme Court, these amendments "govern . . . insofar as just and practicable, [in] all proceedings then pending." Fed. R. Civ. P., Orders of the Supreme Court of the United States Adopting and Amending Rules (Apr. 29, 2015). Finding no reason why it is not just and practicable, the court cites to the amended rules here.

The proper scope of discovery must also be proportional "to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(2)(C) allows a court to limit discovery on motion or on its own if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or may be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the scope of discovery.  Fed. R. Civ. P. 26(b)(1), (a)(2)(C).  A subpoena that seeks irrelevant, overly broad, or duplicative discovery causes undue burden, and the trial court may quash it on those bases. *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 2122437, at *5 (D. Kan. July 20, 2007).  The court may also issue a protective order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]"  Fed. R. Civ. P. 26(c)(1)(D).  With these standards in mind, the court looks first to the definitions in the subpoena.

### 1.   Definition of RARE MOON

Defendant objects that the definition of "RARE MOON" is overbroad and seeks irrelevant information because it includes not only Rare Moon Media, LLC, but also Encompass Consulting Group, LLC; E-Finance Call Center Support; Total Recovery Solutions, LLC; Joshua L. Mitchem; and Jeremy D. Shaffer.  The relevance or connection between Rare Moon Media, LLC, the subpoenaed entity, and the other business entities is not facially evident.  The Fourth Amended Complaint does not even mention these entities.  (Doc. 220 in Case No. 4:13-cv-01171-JSW.)  Therefore, movant has the

burden to show that the discovery sought is relevant.  Movant does not mention these entities in his briefing.  Therefore, movant has not met his burden to show that the entities should be included within the definition of RARE MOON.

Movant also includes Joshua L. Mitchem and Jeremy D. Shaffer in the definition of RARE MOON.  In the Fourth Amended Complaint in the Gilbert lawsuit, respondent alleges that Mitchem is a founder and president of Rare Moon Media, LLC for at least part of the relevant timeframe, and Shaffer is the current president and owner of Rare Moon Media, LLC.  (Doc. 220 ¶¶ 11, 14 in Case No. 4:13-cv-01171-JSW.)  The relevance of Mitchem's and Shaffer's personal acts within this lawsuit is not facially evident, and their acts and knowledge as agents are necessarily included in the definition of Rare Moon Media, LLC.  Movant has not met his burden to show how the information sought is relevant.  Therefore, the court modifies the subpoena to limit the definition of RARE MOON to Rare Moon Media, LLC only.

### 2.   Class Period

Movant seeks information and documents from the CLASS PERIOD, which he defines as "the period from October 22, 2008 to the date of this deposition[.]"  (Doc. 3-2 at 2 ¶ 1.)  Apparently, this is the class period for certification purposes.  Movant alleges that Rare Moon Media, LLC was formed in 2010, however, and it is not facially evident how it could have acted or acquired knowledge prior to that time.  (Doc. 220 in Case No. 4:13-cv-01171-JSW at ¶ 98.)  Furthermore, movant agrees to reduce the time frame from approximately seven years to three years.  (Doc. 11 at 4.)  The court agrees that the CLASS PERIOD is overbroad for purposes of the time period that governs the subpoena topics and document requests.  Movant's agreed modification only seeks information after respondent's formation, however, and it further minimizes respondent's burden.  Therefore, the court modifies the notice to refer to the TIME PERIOD, defined as January 1, 2012 to the date of the deposition.

### 3.   Selling Source

Movant seeks information and documents related to SELLING SOURCE, which he defines as London Bay Capital, LLC; Selling Source, LLC; Glen McKay; MoneyMutual, LLC; Partner Weekly, LLC; John Hashman; and Brian Rauch.  (Doc. 3-2 at 2 ¶ 1.)  The Gilbert lawsuit plaintiffs allege that Rare Moon Media, LLC was the middleman between those entities and certain unlicensed lenders. Selling Source, LLC; Glen McKay; MoneyMutual, LLC; Partner Weekly, LLC; John Hashman; and Brian Rauch are all current defendants in the Gilbert lawsuit.  London Bay Capital, LLC was a defendant in the Gilbert lawsuit, but the court in that suit dismissed the claims against it.

Although Rare Moon Media, LLC is no longer a party to the California litigation, Rare Moon Media, LLC's relationship and interactions with current defendants in the Gilbert lawsuit and the unlicensed lenders is potentially relevant to the existence of a racketeering scheme and the current defendants' knowledge of it.  Because London Bay Capital, LLC is not a current defendant in the Gilbert lawsuit, its knowledge of Rare Moon Media, LLC's interactions with unlicensed lenders is not facially relevant to any current claims.  Therefore, the court modifies the subpoena to remove the reference to London Bay Capital, LLC.  To further clarify the subpoena, the court will modify it to refer to SELLING SOURCE as SELLING SOURCE DEFENDANTS.

### 4.   Lenders

Movant seeks information and documents related to LENDERS, which he defines as including VIP PDL SERVICES, LLC aka VIP Loan Shop; SCS PROCESSING, LLC aka Everest Cash Advance; ACTION PDL SERVICES, LLC aka Action Payday; BD PDL SERVICES, LLC aka Bottom Dollar Payday; and INTEGRITY PDL SERVICES, LLC aka Integrity Payday Loans aka IPL Today.  (Doc. 3-2 at 2 ¶ 2.)  The Fourth Amended Complaint alleges that these entities were required to have licenses to provide loans to California residents, but they knowingly provided loans to

California residents without proper licensing.  These entities, however, are not defendants in the Gilbert lawsuit, so respondent argues that the subpoena seeks irrelevant information and documents. Movant states that he cannot seek the information from the LENDERS because they no longer exist. (Doc. 11 at 10.)

Movant argues that the interactions between RARE MOON and the LENDERS may have led to the SELLING SOURCE DEFENDANTS to be suspicious of RARE MOON, which would be relevant to SELLING SOURCE DEFENDANTS' knowledge that RARE MOON "was operating illegally" and to the allegations that the SELLING SOURCE DEFENDANTS "intended to facilitate and assist that illegal operation."  (Doc. 2 at 2.)  The court believes the discovery sought may be facially relevant in some instances.  RARE MOON's interactions with the unlicensed LENDERS, to the extent communicated to the SELLING SOURCE DEFENDANTS, may be relevant to the issue of the SELLING SOURCE DEFENDANTS' knowledge of the alleged scheme.  Therefore, the court will not prohibit all discovery regarding the LENDERS.  It will, however, modify the topics as necessary—particularly to the extent the requests assume the LENDERS and RARE MOON are the same entities.

**D.  Objections to Subpoena Topics and Document Requests**

The subpoena duces tecum lists nineteen deposition topics and ten categories of document requests.  (Doc. 3-2.)  Respondent objected to each deposition topic and document request in the subpoena.  (*See* Doc. 3-4.)

**1.  Business Relationship Between Rare Moon, Selling Source, and the Lenders**

Deposition topics 1 through 4 and document production request 1 seek information and documents related to the business relationships between RARE MOON, the unlicensed LENDERS, and the SELLING SOURCE DEFENDANTS.  Specifically, the requests follow.

**Deposition Topics**

1. The business relationship during the CLASS PERIOD among RARE MOON, SELLING SOURCE, and the LENDERS with respect to the marketing of loans.

2. The business relationship during the CLASS PERIOD among RARE MOON, SELLING SOURCE, and the LENDERS with respect to the origination and making of loans.

3. The business relationship during the CLASS PERIOD among RARE MOON, SELLING SOURCE, and the LENDERS with respect to the management of loan portfolios.

4. The business relationship during the CLASS PERIOD among RARE MOON, SELLING SOURCE, and the LENDERS with respect to the collecting of payments from borrowers of the loans.

**Document Request**

1. DOCUMENTS sufficient to show what services RARE MOON provided LENDERS during the CLASS PERIOD.

Each deposition topic not only seeks information about the business relationship between RARE MOON and the SELLING SOURCE DEFENDANTS and RARE MOON and the LENDERS, but also between the SELLING SOURCE DEFENDANTS and the LENDERS.  Respondent argues that to the extent the requests seek information related to the business relationship between the SELLING SOURCE DEFENDANTS and the LENDERS, the requests are overbroad and unduly burdensome.  Movants argues that the requests are not overbroad because the LENDERS are front companies controlled by RARE MOON.

The court agrees with respondent that the deposition topics are overbroad.  Movant does not convincingly explain how information regarding business interactions between the SELLING SOURCE DEFENDANTS and the LENDERS would be in the corporate knowledge of RARE MOON. The only evidence movant offers to support its speculation that RARE MOON owns and directs the unlicensed LENDERS is five highly-redacted contracts showing that Shaffer and Mitchem signed

contracts on behalf of VIP PDL Services, LLC as president and CEO.[5]  This is insufficient to show that

RARE MOON has control over VIP PDL Services, LLC, much less the remainder of the LENDERS.

*See NXT, Inc. v. Aerodata Sys., LLC*, No. 12-MC-111-EFM, 2012 WL 3578653, at *2 (D. Kan. Aug.

29, 2012) (holding that the mere fact that two individuals were officers in two companies is "legally

insufficient to demonstrate that the two entities operate as one and to disregard their corporate

formalities").  RARE MOON's business interactions with the LENDERS and RARE MOON's

business interactions with the SELLING SOURCE DEFENDANTS, however, are potentially relevant

to existing claims and the topics are not overbroad.  The court modifies the subpoena deposition topics

accordingly, as reflected in the conclusion of this opinion.  The requested documents are relevant to

existing claims to the extent the services related to information that RARE MOON ultimately

communicated to the SELLING SOURCE DEFENDANTS.  The court's modifications to the

definitions of the RARE MOON and the governing TIME PERIOD appear to resolve respondent's

objections to the overbreadth of the document request.

## 2.  The Identity of Owners, Officers, Directors, and Employees of the Lenders

Deposition topics 5 through 8 and document production request 2 relate to the identity of the

owners, directors, officers, and employees of the five unlicensed LENDERS.  Specifically, the requests

follow.

### Deposition Topics

5.  The IDENTITY of the direct and indirect owners of the LENDERS during the CLASS
    PERIOD.  (For purposes of this notice, the term "IDENTITY" means the full name, all

---

[5] Plaintiff also argues without supporting evidence that one of the unlicensed lenders' banks is in Kansas City, near Rare Moon Media, LLC, not the West Indies, where the lender purportedly operated. (*See* Doc. 11 at 8 ("Plaintiff has already identified one of the banks used and it is Missouri Bank and Trust, which happens to be located in Kansas City, very close to where [Rare Moon Media, LLC] is domiciled.  Which seems more likely?  A Kansas City business opens an account at this small regional bank or VIP Loan Shop, supposedly located in Nevis West Indies?")  Without support, this is insufficient to show that RARE MOON controls VIP Loan Shop, much less each LENDER.

residence and business addresses, all phone numbers and all email addresses of each referenced person or entity.)

6.   The IDENTITY of the directors of the LENDERS during the CLASS PERIOD.

7.   The IDENTITY of the officers of the LENDERS during the CLASS PERIOD.

8.   The IDENTITY of the employees of the LENDERS during the CLASS PERIOD.

**Document Requests**

2.   DOCUMENTS sufficient to show the IDENTITY of the direct and indirect owners, directors, officers and employees of the LENDERS during the CLASS PERIOD.

Respondent objects that the information sought is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in the Gilbert lawsuit. Respondent states that movant stands to gain nothing of probative value to the claim by acquiring the identities and contact information for the owners, directors, officers, or employees of non-parties. Respondent argues that, to the extent movant seeks information regarding what individual agents of the SELLING SOURCE DEFENDANTS communicated with the LENDERS, this is more easily answered in the context of discovery served in the Gilbert lawsuit.

Movant again argues that the LENDERS and RARE MOON are not separate entities, and this is relevant to the SELLING SOURCE DEFENDANTS' knowledge during the time of the alleged scheme.  Movant assumes that RARE MOON owns and controls the LENDERS; however, movant has not made an appropriate prerequisite showing.  Furthermore, the relevance of such information is not facially relevant and appears overbroad.  As discussed above, movant has failed to meet its burden to show that the requested information is within RARE MOON's corporate knowledge and control.  The court denies movant's motion to compel and grants respondent's request for a protective order regarding this document request and these deposition topics.

### 3.   Communications Between Selling Source and  Rare Moon Media, LLC

Deposition topics 9 through 11 and document production requests 3 through 5 relate to the

information exchanged between RARE MOON and the SELLING SOURCE DEFENDANTS

concerning whether the LENDERS were licensed to make loans in California, could only be sold a

lead if they were licensed, and whether the SELLING SOURCE DEFENDANTS complained to RARE

MOON about the LENDERS' unlicensed status.  Specifically, the requests follow.

#### Deposition Topics

9.  The information provided by RARE MOON to SELLING SOURCE during the CLASS
PERIOD concerning whether LENDERS were licensed to make loans in California and the
United States.

10. The information provided by SELLING SOURCE to RARE MOON during the CLASS
PERIOD concerning whether leads would only be sold to LENDERS who were licensed to
make loans in California and the United States.

11. Any complaints made by SELLING SOURCE to RARE MOON during the CLASS
PERIOD concerning whether LENDERS were operating legally in making loans or debt
collection methods.

#### Document Requests

3.  DOCUMENTS sufficient to show what information was provided by RARE MOON to
SELLING SOURCE during the CLASS PERIOD concerning whether LENDERS were
licensed to make loans in California and the United States.

4.  DOCUMENTS sufficient to show what information was provided by SELLING SOURCE
to RARE MOON to [sic] during the CLASS PERIOD concerning whether LENDERS [sic]
whether leads would only be sold to LENDERS who were licensed to make loans in
California and the United States.

5.  DOCUMENTS sufficient to show what complaints were made by SELLING SOURCE to
RARE MOON during the CLASS PERIOD concerning whether LENDERS were operating
legally in making loans or debt collection methods.

Respondent argues that the deposition topics are overbroad because they seek information and

documents from non-parties in the Gilbert lawsuit that have been collectively defined as RARE

MOON.  Respondent also argues that the requests seek discovery from a non-party which could be

more easily acquired through another party and claims it has no documents responsive to the document requests.  Movant argues again that if RARE MOON controls the LENDERS, RARE MOON has the information and documents within its control.  Movant agrees to narrow the scope of the topics to focus on the licensing status for loans made to California residents.  The court's previous rulings regarding the definitions of RARE MOON and the governing TIME PERIOD combined with movant's agreed limitation appear to resolve respondent's concerns.  The court modifies the deposition topics and document requests accordingly.

### 4.  Complaints by Government Agencies or the Public

Deposition topic 12 and document production request 6 relate to complaints made by government agencies or the public about whether the lenders were operating illegally.  Specifically, the requests follow:

### Deposition Topics

12. Any complaints made by members of the public or government agencies during the CLASS PERIOD concerning whether LENDERS were operating legally in making loans or debt collection methods.

### Document Requests

6. Documents sufficient to show what complaints were made by members of the public or government agencies during the CLASS PERIOD concerning whether LENDERS were operating legally in making loans or debt collection methods.

Respondent argues that the deposition topics are overbroad because they seek information and documents from non-parties in the Gilbert lawsuit that have been collectively defined as RARE MOON.  (Doc. 3-4 at 9.)  Respondent argues that the requests are overbroad, unduly burdensome, and seek irrelevant information regarding the licensing of the LENDERS outside of the State of California although the Gilbert lawsuit plaintiffs' claims are based on loans made without a license in the State of

California.  Respondent also argues the requests seek duplicative discovery and are vague and ambiguous because they do not state the recipient of the complaints.

The court finds that the topics are unduly burdensome, overbroad, and seek information not reasonably calculated to lead to the discovery of relevant information.  The only information within RARE MOON's control that could be relevant to current claims in the case would have been exchanged between RARE MOON and SELLING SOURCE DEFENDANTS, and this information is covered by modified deposition topics 9 through 11 and document requests 3 through 5.  Otherwise, the requests do not lead to discoverable relevant information.  Therefore, the court denies movant's request for an order compelling compliance with these requests and grants respondent's request for a protective order.

**5.   Discovery Concerning the Identity of Bank Accounts Used in Connection with Making the Loans or Paying for the Loan Leads**

Deposition topics 13 and 14 and document production requests 7 and 8 relate to the identity of the banks used by RARE MOON and the LENDERS to receive payments from the borrowers and used to pay SELLING SOURCE DEFENDANTS for the loan leads.  Specifically, the requests follow:

**Deposition Topics**

13. The IDENTITY of all banks and account numbers used by RARE MOON and LENDERS to receive payments from loan borrowers during the CLASS PERIOD.

14. The IDENTITY of all banks and account numbers used by RARE MOON and LENDERS to pay money to SELLING SOURCE for loan leads during the CLASS PERIOD.

**Document Requests**

7. DOCUMENTS sufficient to show the IDENTITY of all banks and account numbers used by RARE MOON and LENDERS to receive payment from loan borrowers during the CLASS PERIOD.

8.  DOCUMENTS sufficient to show the IDENTITY of all banks and account numbers used by RARE MOON and LENDERS to pay money to SELLING SOURCE for loan leads during the CLASS PERIOD.

Respondent objects to the requests because they seek information from RARE MOON about the LENDERS and other entities included in the definition of RARE MOON.  Respondent argues that the requests attempt to circumvent the Gilbert lawsuit court's order compelling arbitration and enforcing the class action waiver, and it is unduly burdensome and duplicative of the same issues this Court has ordered to be arbitrated.

To the extent the requests ask for information regarding the banks and account numbers that RARE MOON used to receive payments from loan borrowers, the court agrees that the requests are overbroad and not reasonably calculated to lead to the discovery of relevant information.  RARE MOON is no longer a party to this lawsuit.  Plaintiffs in the Gilbert lawsuit already recovered any losses from RARE MOON through arbitration.  To the extent the total amount lost by plaintiffs is relevant to their damages claims against SELLING SOURCE DEFENDANTS, the Gilbert lawsuit plaintiffs can seek that information directly from SELLING SOURCE DEFENDANTS and class members.  Similarly, the discovery requests seeking the identity of all banks and account numbers used by RARE MOON and the LENDERS to pay money to the SELLING SOURCE DEFENDANTS for loan leads during the class period are overbroad.  Movant has made no showing that it has tried to acquire the information from the SELLING SOURCE DEFENDANTS.  Nor has movant made any showing that the LENDERS' documents are in RARE MOON's possession or control.  As already noted, movant has not made a sufficient showing that RARE MOON controls the LENDERS.  Furthermore, respondent notes that RARE MOON did not receive payments from customers and did not make payments to SELLING SOURCE DEFENDANTS.  Therefore, the court denies movant's

motion to compel compliance with the subpoena regarding these deposition topics and document

requests and grants respondent's request for a protective order.

### 6.   Discovery regarding the identity of and amount paid by California residents and by Rare Moon Media for loan leads.

Deposition topics 15 through 18 and document requests 9 and 10 seek the identity of and

amounts paid by California residents and by RARE MOON for loan leads.  Specifically, the requests

follow.

### Deposition Topics

15. The IDENTITY of all persons with California addresses who received loans from LENDERS during the CLASS PERIOD.

16. Your ability to determine the IDENTITY of all persons with California addresses who received loans from LENDERS during the CLASS PERIOD.

17. The amount of money paid back by all persons with California addresses who received loans from LENDERS during the CLASS PERIOD.

18. The amount of money paid by RARE MOON or LENDERS to SELLING SOURCE for the loan leads during the CLASS PERIOD.

### Document Requests

9.  DOCUMENTS sufficient to show the IDENTITY of all persons with California addresses who received loans from LENDERS during the CLASS PERIOD.

10. DOCUMENTS sufficient to show the amount of money paid back by all persons with California addresses who received loans from LENDERS during the CLASS PERIOD.

Deposition topic 16 regarding RARE MOON's ability to determine the identity of all persons

with California addresses who received loans from the LENDERS during the TIME PERIOD appears

relevant and is not unduly burdensome as modified by the court's above rulings.  The court grants

movant's motion to compel as to that deposition topic.  The remaining requests assume RARE

MOON's control over the LENDERS, and the court has already held that movant has failed to meet his

burden in this regard.  Respondent states, however, that it has already reviewed some of the

LENDERS' business records pursuant to a limited discovery agreement and determined that during the CLASS PERIOD (which includes the TIME PERIOD), more than 500 California residents received loans from the LENDERS, California residents paid the LENDERS more than $500,000; and the LENDERS paid the SELLING SOURCE DEFENDANTS more than $100,000 for leads regarding California residents.  (Doc. 10-2 ¶¶ 12–13.)  To the extent this information is now in RARE MOON's corporate knowledge, it is not unduly burdensome for RARE MOON to testify as to those topics. Furthermore, to the extent the reviewed documents are currently in respondent's actual possession, it imposes a minimal burden to provide the supporting documents at the deposition.  Therefore, the court grants movant's motion to compel in part, with modifications.  The court will modify the requests to reflect that respondent is only required to testify regarding information currently within its corporate knowledge and produce documents, if any, that are currently within its actual possession.

### 7.   Discovery regarding whether the Lenders were licensed in California

Deposition topic 19 seeks testimony regarding whether the lenders were licensed in California. Specifically, the request follows:

> 19. Whether the LENDERS ever had licenses to make loans to California residents during the CLASS PERIOD and the details of any such licenses.

Respondent does not object to the breadth of this request, and the court does not believe it is overbroad as limited by its prior modifications.  Respondent complains, however, that movant will not accept a declaration stating that to the best of RARE MOON's knowledge, none of the LENDERS were licensed in California and, further, that RARE MOON was unaware of a licensing requirement. (Doc. 10 at 17.)  Movant responds that the declaration would be acceptable if it was either signed by the LENDERS themselves or admits that RARE MOON controls the LENDERS and therefore has personal knowledge the LENDERS' actions.  Apparently movant is dissatisfied with the proposed declaration because respondent will not admit that it controls the LENDERS.  Movant also argues that

it cannot seek the information from the LENDERS because they no longer exist.[6]  Respondent argues that it can only make a declaration as to its own knowledge and it cannot speak to the corporate knowledge of the LENDERS.  The court agrees that RARE MOON can only testify to matters within its corporate knowledge.  The court will modify the request to further clarify that the information sought is only that which is already in RARE MOON's corporate knowledge.

### E.     CONCLUSION

For the reasons already discussed, the court modifies the subpoena as follows (strikeouts indicate deletions and **bold text** indicates additions.)

The matters on which the deponent will be examined are as follows:

1.  The business relationship during the ~~CLASS~~ **TIME** PERIOD ~~among~~ **between (1)** RARE MOON~~, and~~ SELLING SOURCE **DEFENDANTS**~~, and the LENDERS~~ **and (2) RARE MOON and the LENDERS** with respect to the marketing of loans.  (For purposes **of this** notice, the term "~~CLASS~~ **TIME** PERIOD" refers to the period from **January 1, 2010** ~~October 22, 2008~~ to the date of this deposition; the term "RARE MOON" refers to Rare Moon Media, LLC~~, Encompass Consulting Group, LLC, E-Finance Call Center Support, LLC, Total Recovery Solutions, LLC, Joshua L. Mitchem, and Jeremy D. Shaffer~~; the term "SELLING SOURCE **DEFENDANTS**" refers to ~~London By Capital, LLC,~~ Selling Source, LLC, Glen McKay, MoneyMutual, LLC, Partner Weekly, LLC, John Hashman, and Brian Rauch; **and** the term "LENDERS" refers to VIP PDL SERVICES, LLC aka VIP Loan Shop, SCS PROCESSING, LLC aka Everest Cash Advance, ACTION PDL SERVCIES, LLC aka Action Payday, BD PDL SERVICES, LLC aka Bottom Dollar Payday, and INTEGRITY PDL SERVICES, LLC aka Integrity Payday Loans aka IPL Today.)

---

[6] It is unclear how the LENDERS could sign the declaration if they no longer exist.

-21-

2. The business relationship during the ~~CLASS~~ **TIME** PERIOD ~~among~~ **between (1)** RARE MOON~~, and~~ SELLING SOURCE **DEFENDANTS**~~, and the LENDERS~~ **and (2) RARE MOON and the LENDERS** with respect to the origination and making of loans.

3. The business relationship during the ~~CLASS~~ **TIME** PERIOD ~~among~~ **between (1)** RARE MOON~~, and~~ SELLING SOURCE **DEFENDANTS**~~, and the LENDERS~~ **and (2) RARE MOON and the LENDERS** with respect to the management of loan portfolios.

4. The business relationship during the ~~CLASS~~ **TIME** PERIOD ~~among~~ **between (1)** RARE MOON~~, and~~ SELLING SOURCE **DEFENDANTS**~~, and the LENDERS~~ **and (2) RARE MOON and the LENDERS** with respect to the collecting of payments from borrowers of the loans.

~~5. The IDENTITY of the direct and indirect owners of the LENDERS during the CLASS PERIOD.  (For purposes of this notice, the term "IDENTITY" means the full name, all residence and business addresses, all phone numbers and all email addresses of each referenced person or entity.)~~

~~6. The IDENTITY of the directors of the LENDERS during the CLASS PERIOD.~~

~~7. The IDENTITY of the officers of the LENDERS during the CLASS PERIOD.~~

~~8. The IDENTITY of the employees of the LENDERS during the CLASS PERIOD.~~

~~9.~~ **5.** The information provided by RARE MOON to SELLING SOURCE **DEFENDANTS** during the ~~CLASS~~ **TIME** PERIOD concerning whether LENDERS were licensed to make loans in California ~~and the United States.~~ **to California residents.**

~~10.~~ **6.** The information provided by SELLING SOURCE **DEFENDANTS** to RARE MOON during the ~~CLASS~~ **TIME** PERIOD concerning whether leads would only be sold to

LENDERS who were licensed to make loans in California ~~and the United States.~~ **to California residents.**

~~11.~~ **7.**  Any complaints made by SELLING SOURCE **DEFENDANTS** to RARE MOON during the ~~CLASS~~ **TIME** PERIOD concerning whether LENDERS were operating legally in making loans **to or collecting debts from California residents.** ~~or debt collection methods.~~

~~12. Any complaints made by members of the public or government agencies during the CLASS PERIOD concerning whether LENDERS were operating legally in making loans or debt collection methods.~~

~~13. The IDENTITY of all banks and account number used by RARE MOON and LENDERS to pay money to receive payments from loan borrowers during the CLASS PERIOD.~~

~~14. The IDENTITY of all banks and account numbers used by RARE MOON and LENDERS to pay money to SELLING SOURCE for loan leads during the CLASS PERIOD.~~

~~15.~~ **8.**  The **number** ~~IDENTITY~~ of all persons with California addresses who received loans from LENDERS during the ~~CLASS~~ **TIME** PERIOD **to the extent currently within RARE MOON's corporate knowledge**.

~~16.~~ **9.**  Your ability to determine the IDENTITY of all persons with California addresses who received loans from LENDERS during the ~~CLASS~~ **TIME** PERIOD.

~~17.~~ **10.**  The amount of money paid back by all persons with California addresses who received loans from LENDERS during the ~~CLASS~~ **TIME** PERIOD **to the extent currently within RARE MOON's corporate knowledge**.

~~18.~~ **11.**  The amount of money paid by RARE MOON or LENDERS to SELLING SOURCE **DEFENDANTS** for the loan leads during the ~~CLASS~~ **TIME** PERIOD **to the extent currently within RARE MOON's corporate knowledge**.

~~19.~~ **12.  RARE MOON's knowledge of** ~~Ww~~hether **the** LENDERS ever had licenses to make loans to California residents during the ~~CLASS~~ **TIME** PERIOD and the details of any such licenses.

In addition, the deponent is required to produce the following documents:

1.  DOCUMENTS sufficient to show what services RARE MOON provided LENDERS during the ~~CLASS~~ **TIME** PERIOD.  (For purposes of this Notice, the terms "DOCUMENT" or DOCUMENTS" refer to any writing as defined in California Evidence Code § 250, and includes email and electronic communications, electronic files, photographs, audio and video tapes.)

~~2.   DOCUMENTS sufficient to show the IDENTITY of the direct and indirect owners, directors, officers and employees of the LENDERS during the CLASS~~ **~~TIME~~** ~~PERIOD.~~

~~3.~~ **2.**  DOCUMENTS sufficient to show what information was provided by RARE MOON to SELLING SOURCE **DEFENDANTS** during the ~~CLASS~~ **TIME** PERIOD concerning whether LENDERS were licensed to make loans in California and the United States.

~~4.~~ **3.**  DOCUMENTS sufficient to show what information was provided by SELLING SOURCE **DEFENDANTS** to RARE MOON ~~to~~ during the ~~CLASS~~ **TIME** PERIOD concerning whether leads would only be sold to LENDERS who were licensed to make loans in California and the United States.

~~5.~~ **4.**  DOCUMENTS sufficient to show what complaints were made by SELLING SOURCE **DEFENDANTS** to RARE MOON during the ~~CLASS~~ **TIME** PERIOD concerning whether LENDERS were operating legally in making loans or debt collection methods.

~~6.   DOCUMENTS sufficient to show what complaints were made by members of the public or government agencies during the CLASS PERIOD concerning whether LENDERS were operating legally in making loans or debt collection methods.~~

7.   ~~DOCUMENTS sufficient to show the IDENTITY of all banks and account numbers used by~~

~~RARE MOON and LENDERS to receive payments from loan borrowers during the CLASS~~

~~**TIME** PERIOD.~~

8.   ~~DOCUMENTS sufficient to show the IDENTITY of all banks and account numbers used by~~

~~RARE MOON and LENDERS to pay money to SELLING SOURCE **DEFENDANTS** for loan~~

~~leads during the CLASS **TIME** PERIOD.~~

~~9.~~   **5.**   DOCUMENTS **currently within the actual possession of Rare Moon Media, LLC**

sufficient to show the IDENTITY of all persons with California addresses who received loans

from LENDERS during the ~~CLASS~~ **TIME** PERIOD.

~~10.~~   **6.**   DOCUMENTS **currently within the actual possession of Rare Moon Media, LLC**

sufficient to show the amount of money paid back by all persons with California addresses who

received loans from LENDERS during the ~~CLASS~~ **TIME** PERIOD.

**IT IS THEREFORE ORDERED** that movant's Motion to Compel Non-Party Witness to

Comply with Deposition Subpoena (Doc. 1) is hereby granted in part and denied in part.

Dated this 12th day of January, 2016, at Kansas City, Kansas.

s/ Carlos Murguia_____
**CARLOS MURGUIA**
**United States District Judge**